1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JAMES EDWARD SCOTT, III,

Plaintiff,

v.

TAITANO, *et al.*,

Defendants.

Case No. 3:23-CV-00263-ART-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

[ECF No. 38]

This case involves a civil rights action filed by Plaintiff James Edward Scott, III ("Scott") against Defendants Nephi Taitano ("Taitano"), Michal Ortzel ("Ortzel"), Daren Baker ("Baker"), Joshua Collins ("Collins"), Brittany Owens aka Smallwood ("Owens"), and Kristy Fonoimoana ("Fonoimoana") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 38.) On December 20, 2024, the Court gave Scott notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998). (ECF No. 40.) Scott did not timely file his response, thus the Court *sua sponte* granted Scott an extension of time to file his response. (ECF No. 43.) To date, Scott has failed to file an opposition to the motion. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 38), be granted.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Scott is formerly an inmate incarcerated in the Nevada Department of Corrections ("NDOC") and housed at the Northern Nevada Correctional Center ("NNCC"). On June 12, 2023, Scott submitted a civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Scott was incarcerated at NNCC. (ECF Nos. 1, 1-1.) The claims underlying

---

[1]    This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

this lawsuit relate to Scott's ability to participate in his Islamic faith while housed at an outside hospital. Specifically, Scott's complaint states he believes that as part of his faith, he must pray several times a day and purify himself with water before praying. Scott alleges that over a three-day period in August 2022, while housed at an outside hospital, several different corrections officers attempted to or did prevent Scott from praying or performing his pre-prayer rituals. Scott further alleges that prison officials enacted a memorandum requiring that Scott wear full belly, waist, and leg restraints during his prayer activities, which made it difficult for him to participate in those activities. (*See* ECF No. 5.)

On January 16, 2024, the District Court entered a screening order on Scott's complaint, allowing Scott to proceed on the following claims: (1) First Amendment free exercise; and (2) violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000 ("RLUIPA"). (ECF No. 4.) Each claim was allowed to proceed against the following Defendants: Taitano, Ortzel, Baker, Collins, Owens, and Fonoimoana. (*Id.*)

On December 19, 2024, Defendants filed the instant motion arguing summary judgment should be granted because: (1) Scott failed to exhaust his administrative remedies; and (2) Defendants are entitled to qualified immunity as Scott cannot establish that any violation occurred and there is no clearly established case that would put Defendants on notice their conduct violated Scott's rights. (ECF No. 38.)

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material.

*Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary

materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*

4

*of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III. DISCUSSION

Defendants argue that summary judgment should be entered because Scott failed to exhaust his administrative remedies prior to filing this lawsuit. (ECF No. 38.) Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524-25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative

remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id*. at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id*. at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

A.    **NDOC's Inmate Grievance System**

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. (*See* ECF No. 38-6.) An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*Id.* at 11-16.) The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (*Id.* at 11.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's grievance at this, and all subsequent levels." (*Id.* at 12.) NDOC staff is required to respond within forty-five days. (*Id.* at 13.)

Per AR 740, a grievance at any level may be either, "granted, denied, partially granted, abandoned, duplicate, not accepted or grievable, resolved, settled, withdrawn; or referred to the Office of the Inspector General." (*Id.* at 3.) If a grievance is "granted" or resolved by "settlement" at any level, the grievance process is considered complete. (*Id.* at 6.) However, if a grievance is either "partially granted, denied, or resolved" at any level,

the inmate must appeal the response to the next level for the grievance process to be deemed "complete" for purposes of exhausting their administrative remedies. (*Id*.)

The appeal of an informal grievance is called a "First Level Grievance" and must be filed within 5 days of receiving a response. (*Id*. at 13.) A First Level Grievance should be reviewed, investigated, and responded to by the Warden at the institution where the incident being grieved occurred; however, the Warden may utilize any staff in the development of a grievance response. (*Id*.) The time limit for a response to the inmate is forty-five days. (*Id*. at 14.)

Within five days of receiving a First Level response, the inmate may appeal to the Second Level Grievance, which is subject to still-higher review. (*Id*. at 15.) Officials are to respond to a Second Level Grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id*.at 15.) Upon receiving a response to the Second Level Grievance, the inmate will be deemed to have exhausted his administrative remedies and may then file a civil rights complaint in federal court.

**B.    Analysis**

In this case, Defendants argue Scott failed to properly exhaust his administrative remedies because he did not fully appeal any grievances through all the necessary grievance levels. (ECF No. 38 at 3-5, 7-9.) To support their arguments, Defendants submitted copies of Scott's inmate grievance history, including the two grievances that relate to the incident at issue in this case—Grievance No. 2006-31-42717 and No. 2006-31-42716. (*See* ECF No. 38-3 (Scott's Inmate Grievance History.))

A careful review of these records supports Defendants arguments. Although Scott did file two grievances related to his religious issues, the grievances were deemed "abandoned" and thus were not properly grieved through all three levels required by AR 740. On September 12, 2022, Scott initiated Informal Grievance No. 2006-31-42717, which was denied on September 27, 2022. (*Id*. at 89.) On October 20, 2022, Scott filed his First Level Grievance, which was denied on November 4, 2022. (*Id*. at 89-90.) On December 27, 2022, Scott appealed this denial to the Second Level, and on January 9,

2023 received a response that the Second Level Grievance that Scott had "blacked out the dates on [his] grievance form to reflect a different date from when [he] originally signed them," and had thus been deemed "abandoned". (*Id.* at 90.) On September 12, 2022, Scott also initiated Informal Grievance No. 2006-31-42716, which was denied on September 27, 2022. (*Id.* at 92.) On October 20, 2022, Scott filed his First Level Grievance and was told to resubmit as he had note provided a justification to continue to the first level and should include all previously submitted grievance documents. (*Id.* at 92-93.) On December 27, 2022, Scott filed his First Level Grievance and on January 9, 2023 received a response that on the First Level Grievance Scott had "blacked out the dates on [his] grievance form to reflect a different date from when [he] originally signed them," and had thus been deemed "abandoned". (*Id.* at 93.)

It is well established that the PLRA requires "proper exhaustion" of an inmate's claims. *See Woodford*, 548 U.S. at 90. Proper exhaustion means an inmate must "use *all* steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119 (citing *Woodford*, 548 U.S. at 90) (emphasis added). Additionally, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Here, it appears Scott failed to follow all required steps to allow prison officials to reach the merits of the issue as he failed to file any grievance related to the claims in this case. Accordingly, the Court finds that Scott failed to exhaust his administrative remedies pursuant to NDOC Administrative Regulation 740 prior to initiating this action. As such, Defendants have met their burden to establish that Scott failed to exhaust his administrative remedies in his case.

The burden now shifts to Scott "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). However, because Scott did not oppose Defendants' motion for summary judgment, he provides no evidence to show that administrative remedies were unavailable to him. Because Scott presents

no evidence that administrative remedies were effectively "unavailable," the Court concludes that Scott failed to exhaust available administrative remedies prior to filling this action. Accordingly, the Court recommends that Defendants' motion for summary judgment be granted.[2]

## IV. CONCLUSION

For the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 38), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 38), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: March 4, 2025

_____

**UNITED STATES MAGISTRATE JUDGE**

---

[2]    Because the Court finds that Scott failed to exhaust his administrative remedies, the Court need not address Defendants' remaining arguments in favor of summary judgment.

9